UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Karen B. Olson, Esq.
Knuckles, Komosinski & Manfro, LLP
565 Taxter Road, Suite 590
Elmsford, NY 10523
Phone: (914) 345-3020
Fax: (914)992-9154
kbo@kkmllp.com

**In Re:**

**YSABEL ABREU-DETORRES,**

Case No.:       18-26172-CMG
Chapter:        13
Hearing Date: December 5, 2018
Judge:          Christine M. Gravelle

## OBJECTION TO CONFIRMATION OF THE DEBTOR'S PROPOSED CHAPTER 13 PLAN

Secured Creditor, Selene Finance LP as servicer for NJCC Fund #5 Trust (the "Creditor") by and through its attorneys, Knuckles, Komosinski & Manfro, LLP, submits this objection to confirmation of the proposed Modified Chapter 13 plan of debtor Ysabel Abreu-Detorres (the "Debtor").

1.      On or about August 13, 2018, the Debtors herein filed the instant petition under Chapter 13 of the Bankruptcy Code and pursuant thereto the automatic stay was imposed.

2.      The Trust is the secured creditor of the Debtor pursuant to a note and mortgage executed by the Debtor and Luis M. Torres on May 29, 2003, to secure payment of the principal sum of $152,000.00 on property located at 395 Mechanic Street, Perth Amboy, NJ 08861 (the "Property").  After a series of written assignments, the Mortgage was ultimately assigned to the

Creditor by written instrument dated July 24, 2018. Copies of the note, mortgage, and assignments are annexed hereto collectively as **Exhibit A**.

3.      The Creditor is currently working towards filing its Proof of Claim on the Court's Registry.  As of the petition filing, the Creditor is owed approximately $336,707.13, of which $227,821.55 are pre-petition arrears.

4.      The Debtor's Chapter 13 Plan fails to identify any pre-petition arrears.  However, the Debtor's Plan proposes that the Debtor will be selling the Property within twelve (12) months.  The proposed Plan is speculative in nature as it contemplates a sale which has neither been offered or approved by the Creditor.  A copy of the Debtor's proposed Chapter 13 plan is annexed hereto as **Exhibit B**.

5.      To date, there have been no adequate protection payments or any post-petition payments made by Debtor.  Furthermore, the Debtor's proposed plan does not identify any amounts to be paid outside the plan as monthly payments.

6.      Furthermore, the Debtor's plan proposes to pay $200.00 per month for 60 months to the Trustee.  This amount is clearly insufficient to cure the approximate $227,821.55 in pre-petition arrears.

7.      Consequently, the Creditor is not adequately provided for in the Debtor's Chapter 13 Plan and objects to confirmation of said plan.

8.      The Creditor will withdraw its objection provided the Debtor files a Modified Chapter 13 Plan sufficient to fund the arrears to the Creditor.

9.      The Creditor respectfully requests that an additional fee of $500.00 be added to its proof of claim arrears, for the cost of preparing this objection.

WHEREFORE, the Creditor respectfully requests that confirmation of the Debtor's plan be denied and such other and further relief as is just, proper, and equitable.

Dated: October 17, 2018

**Knuckles, Komosinski & Manfro, LLP**
Attorneys for Selene Finance LP as servicer for NJCC Fund #5 Trust

By: _____
KAREN B. OLSON, ESQ.
Knuckles, Komosinski & Manfro, LLP
565 Taxter Road, Suite 590
Elmsford, NY 10523
Phone: (914) 345-3020
Fax: (914)992-9154
kbo@kkmllp.com

**EXHIBIT A**

MIN #:
Loan Number :

# NOTE

May 29th, 2003                              PERTH AMBOY                         New Jersey
[Date]                                          [City]                            [State]

395 MECHANIC STREET, PERTH AMBOY, NJ 08861

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 152,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is Fleet National Bank

I will make all payments under this Note in the form of cash, check or money order.
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          6.750 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 01st          day of each month beginning on July 1st, 2003          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on June 1st, 2033          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."
I will make my monthly payments at 100 Federal Street Boston, MA 02110
                                                         or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 985.87

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials:

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of F i f t e e n    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5 . 00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) D e f a u l t**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

CMP-5N (02/07).01                             Page 2 of 3                                    Form 3200 1/01
                                                                                            Initials:

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
YSABEL TORREZ                   -Borrower       LUIS M TORREZ                   -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                       -Borrower

                                                PAY TO THE ORDER OF

_____ (Seal)        _____ (Seal)
                                -Borrower                                       -Borrower
                                                WITHOUT RECOURSE

                                                Cendant Mortgage Corporation
                                                Shanique James, Assistant Vice President

_____ (Seal)        _____ (Seal)
                                -Borrower                                       -Borrower

                                                PAY TO THE ORDER OF
                                                Cendant Mortgage Corporation
                                                3000 Leadenhall Road                    *[Sign Original Only]*
                                                P.O. Box 5449
                                                Mount Laurel, NJ 08054
                                                WITHOUT RECOURSE

                                                Fleet National Bank
                                                Shanique James, Assistant Vice President

## SIGNATURE/NAME AFFIDAVIT

DATE: May 29th, 2003

LOAN #:

BORROWER: YSABEL TORRES, LUIS M TORRES

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

YSABEL TORRES _____    _____
(Print or Type Name)                                                         Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____    _____
(Print or Type Name)                                                         Signature

_____    _____
(Print or Type Name)                                                         Signature

_____    _____
(Print or Type Name)                                                         Signature

_____    _____
(Print or Type Name)                                                         Signature

and that                                                                                       are one

and the same person.

State/Commonwealth of NJ
County/Parish of MIDDLESEX

Subscribed and sworn (affirmed) before me
this 29th            day of May          , 2003

                                                           _____
                                                           Notary Public in and for
                                                           the State/Commonwealth of NJ
                                                           County/Parish of MIDDLESEX
                                                           My Commission Expires:

MB2-304 (9103)                        VMP MORTGAGE FORMS - (800)521-7291                        3/01

## SIGNATURE/NAME AFFIDAVIT

DATE: May 29th, 2003

LOAN #:

BORROWER: YSABEL TORREZ, LUIS M TORREZ

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

LUIS M TORREZ
_____          _____
(Print or Type Name)                 Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____          _____
(Print or Type Name)                 Signature

_____          _____
(Print or Type Name)                 Signature

_____          _____
(Print or Type Name)                 Signature

_____          _____
(Print or Type Name)                 Signature

and that

and the same person.                                          are one

State/Commonwealth of NJ
County/Parish of MIDDLESEX

Subscribed and sworn (affirmed) before me
this 29th          day of  May          , 2003

_____
Notary Public in and for  Eralides E. Cabrera, Esq.
the State/Commonwealth of NJ
County/Parish of MIDDLESEX
My Commission Expires:

LND-304 (3103)          VMP MORTGAGE FORMS - (830)521-7291          3/01

MIDDLESEX COUNTY CLERK

00210161642

Index   MORTGAGE BOOK

<u>Return To:</u>

    FLEET NATIONAL
    2001 BISHOPS GATE BLVD
    MT LAUREL,NJ,08054

Book   08759    Page   0874

No. Pages   0021

Instrument  MORTGAGE

Date :   8/04/2003

Time :   8:20:09

Control #   200308040029

TORRES
YSABEL

SEP 2 d 2003

INST#        MG 2003 057693

Employee ID   MALTBS

| RECORDING | $ | 120.00 |
|---|---|---|
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |

Total:      $      120.00

STATE OF NEW JERSEY
MIDDLESEX COUNTY CLERK



ELAINE FLYNN
COUNTY CLERK



200308040029

**DO NOT REMOVE THIS PAGE.
TO ACCESS THE IMAGE OF
THE DOCUMENT RECORDED
HEREUNDER BY BOOK AND
PAGE NUMBER, USE THE
BOOK AND PAGE NUMBER
ABOVE.**

**Cover sheet is part of Middlesex County filing record**

**Retain this page for future reference**

**Not part of the original submitted document**

B08759P-874

*Record &*
Return To:

Fleet National Bank
2001 Bishops Gate Boulevard
Mount Laurel, NJ 08054

Prepared By:
Marilyn Lapsey, Fleet
National Bank
50 Jordan Street East
Providence, RI 02914

RECORDED
ELAINE H. FLYNN
MIDDLESEX CTY CLERK

2003 AUG -4  AM 8: 27

BOOK #_____
PAGE #_____
# OF PAGES_____

─────────────[Space Above This Line For Recording Data]─────────────

# MORTGAGE    Loan #:

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 29th,  2003
together with all Riders to this document.
(B) "Borrower" is YSABEL TORREZ, A MARRIED WOMAN, LUIS M TORREZ, A MARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Fleet National Bank

Lender is a National Association
organized and existing under the laws of United States of America

**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

-6(NJ) (0005)
Page 1 of 15                          Initials:
VMP MORTGAGE FORMS - (800)521-7291

B08759P-875                    Original

Lender's address is 100 Federal Street Boston, MA 02110

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated May 29th, 2003
The Note states that Borrower owes Lender One Hundred Fifty-Two Thousand Dollars and
Zero Cents                                                                    Dollars
(U.S. $ 152,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1st, 2033
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

VMP®-6(NJ) (0005)                        Page 2 of 15        Initials:                    Form 3031 1/01

Original

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender  the following described property located in the
COUNTY                    of                    MIDDLESEX                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
Being more particularly described by a legal description attached hereto and made a part thereof.  Being the same premises conveyed to the mortgagors herein by deed being recorded simultaneously herewith; this being a purchase money mortgage given to secure the purchase price of the above described premises.

Property Account Number:                                        which currently has the address of
395  MECHANIC STREET                                                                [Street]
PERTH AMBOY                                        [City], New Jersey 08861        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

*(MP)*-6(NJ) (0005)                    Page 3 of 15                    Initials:                    Form 3031 1/01

Original

# *B*runswick *S*urveying, *I*nc.

**Land Surveying**
**61 Stelton Road**
**Piscataway, New Jersey 08854**
**Phone (732) 752-0100**
**Fax (732) 752-0101**

Legal Description
N/F Ysabel Torres and Luis M. Torres
Block 144      Lots 13.01 & 14.02
City of Elizabeth-Middlesex County, NJ

Beginning at a point along the northwesterly line of Mechanic Street, southwesterly 130.00' from the intersection of the southwesterly line of Broad Street with the northwesterly line of Mechanic Street and thence,

1. N. 59 degrees 49 minutes 30 seconds W. 152.86' to a point and thence,

2. S. 30 degrees 10 minutes 30 seconds W. 20.00' to a cap and thence,

3. S. 59 degrees 49 minutes 30 seconds E. 50.36' to a point and thence,

4. S. 30 degrees 10 minutes 30 seconds W. 27.50' to a pin and thence,

5. S. 59 degrees 49 minutes 30 seconds E. 102.50 to a point along the northwesterly line of Mechanic Street and thence,

6. Along the northwesterly line of Mechanic Street, N. 30 degrees 10 minutes 30 seconds E. 47.50' to the point or place of beginning.

   The above described lands are known as Lots 13.01 & 14.02 in Block 144 as shown on the current Official Tax Maps of the City of Perth Amboy.

   Premises more commonly known as 395 Mechanic Street.

   The above description is in accordance with a survey prepared by Brunswick Surveying, Inc. dated 5/15/2003 as File No. 1137-03.

Robert M. Horvath, NJLS
License #27476

B08759P-878

Robert M. Horvath, L.S.
Jay A. Stuhl, Jr., L.S.

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials:

B08759P-879

Original

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

  **4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

B08759P-880

Original

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(NJ) (0005)                Page 6 of 15        Initials:          Form 3031 1/01

Original

B08759P-881

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6. **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   7. **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   8. **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

B08759P-882

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

B08759P-884

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP®-6(NJ) (0005)                Page 10 of 15                Initials:                Form 3031 1/01

B08759P-885

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

-6(NJ) (0005)                            Page 11 of 15                    Initials:                          Form 3031 1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(NJ) (0005)                    Page 12 of 15                    Initials:                    Form 3031 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Eralides E. Cabrera, Esq.                 YSABEL TORRES                      -Borrower

_____          _____ (Seal)
Eralides E. Cabrera, Esq.                 LUIS M TORRES                      -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                                               -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                                               -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                                               -Borrower

-6(NJ) (0005)                    Page 14 of 15                    Form 3031 1/01

B08759P-889

STATE OF NEW JERSEY, MIDDLESEX                                County ss:

On this 29th            day of May, 2003                           , before me, the subscriber,
personally appeared , YSABEL TORRES, LUIS M TORRES

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

_____

Notary Public

Eralides E. Cabrera, Esq.
An Attorney. at Law of N.J.

VMP-6(NJ) (0005).02                    Page 15 of 15        Initials:                Form 3031 1/01

B08759P-890

Loan #:

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 29th            day of May,  2003                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Fleet National Bank

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
395 MECHANIC STREET, PERTH AMBOY, NJ 08861

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials:
Page 1 of 4                                             Form 3170 1/01
VMP-57R (0008)           VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

<table>
<tr><td>VMP-57R (0008)</td><td>Page 2 of 4</td><td>Initials: </td><td>Form 3170 1/01</td></tr>
</table>

3/23/2003 6:18 PM

B08759P-892

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0008)                     Page 3 of 4                     Initials: _____ Form 3170 1/01

B08759P-893

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
YSABEL TORRES            -Borrower       LUIS M TORRES           -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                               -Borrower


VMP-57R (0008)                    Page 4 of 4                    Form 3170 1/01

*Record and Return to:*            Assignment of Deed            Loan #:
 Mortgage Services                  of Trust or Mortgage           Name:  TORREZ
P.O. Box 5449                                                      State of: NJ
3000 Leadenhall Road                                              County of: MIDDLESEX
Mt. Laurel, NJ 08054
Security #:

Know all men by these presents, that Fleet National Bank 3000 Leadenhall Road  Mt. Laurel, New Jersey,
a Association existing under the laws of the state of United States for valuable consideration, the receipt of
which hereby acknowledged, does hereby grant, bargain, sell, assign and transfer to:

Cendant Mortgage Corporation
3000 Leadenhall Road
Mt. Laurel, NJ 08054

That certain promissory note and Deed of Trust or Mortgage described as follows:
Note and Deed of Trust or Mortgage dated: 05/29/03
Amount:$152,000.00          Executed by: YSABEL TORREZ
                                         LUIS M TORREZ

Clerks File or Instrument No:        Recorded Date:
Book:              Volume:                Page:
Address: 395 MECHANIC ST PERTH AMBOY NJ 08861
Describing land therein as described in Deed of Trust/Mortgage referred to herein.

Together with the Note therein or referred to, the money due and to become due thereon with interest and
all rights accrued or to accrue under said Deed of Trust or Mortgage.
Dated: 06/16/03

                        ~ Fleet National Bank, by
                         Cendant Mortgage Corporation, Authorized Agents
                         3000 Leadenhall Road
                         Mount Laurel, NJ 08054

Witnessed By: _____          By: _____
              Amanda Meehan                 Shanique James
                                            Assistant Vice President

Prepared By: _____           By: _____
             Briana Adams                   Tremayne Wood
                                            Assistant Secretary

State of New Jersey, County of Burlington
On 06/16/03, Before me the undersigned, a notary public in and for said state and county, personally
appeared Shanique James and Tremayne Wood personally known to me or proved to me on the basis of
satisfactory evidence to be Authorized Agent and Authorized Agent of the Association that executed the
within instrument, on behalf of the Association therein named, and acknowledged to me that such
Association executed the within instrument pursuant to its by-laws or resolution of its board of directors.
Witness my hand and official seal in the state and county last aforesaid.

_____                     Noreen Marini
Notary Public                       Notary Public for New Jersey
                                    My Commission Expires: 02/23/2004

CERTIFIED TRUE AND CORRECT
NOREEN MARINI COPY OF THE ORIGINAL WHICH
NOTARY PUBLIC OF NEW JERSEY BEEN TRANSMITTED FOR
My Commission Expires RECORDATION

_____                          CERTIFIED TRUE AND CORRECT
CENDANT MORTGAGE CORPORATION             COPY OF THE ORIGINAL WHICH
                                         HAS BEEN TRANSMITTED FOR RECORDATION
                                         CENDANT MORTGAGE CORPORATION

*STATE OF NEW JERSEY*
*DEPARTMENT OF TREASURY*
*SHORT FORM STANDING*

*PHH MORTGAGE CORPORATION*

*With the Previous or Alternate Name*
*COLDWELL BANKER MORTGAGE (Alternate Name)*
*INSTAMORTGAGE.COM (Alternate Name)*
*PHH MORTGAGE SERVICES (Alternate Name)*
*CENDANT MORTGAGE SERVICES CORPORATION (Previous Name)*
*PHH MORTGAGE SERVICES CORPORATION (Previous Name)*
*UNITED STATES MORTGAGE CORPORATION (Previous Name)*
*US MORTGAGE CORPORATION (Previous Name)*
*PHH US MORTGAGE CORPORATION (Previous Name)*
*MORTGAGESAVE.COM (Alternate Name)*
*CENTURY 21 MORTGAGE (Alternate Name)*
*ERA MORTGAGE (Alternate Name)*
*CENDANT MORTGAGE CORPORATION (Previous Name)*
*DOMAIN DISTINCTIVE PROPERTY FINANCE (Alternate Name)*

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named New Jersey Domestic Profit Corporation was registered by this office on November 16, 1977.*

*As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.*

*I further certify the registered agent and registered office are:*

*Corporation Service Company*
*830 Bear Tavern Rd*
*West Trenton, NJ 08628*

*Continued on next page . . .*

*Page 1 of 2 .*

*STATE OF NEW JERSEY*
*DEPARTMENT OF TREASURY*
*SHORT FORM STANDING*

*PHH MORTGAGE CORPORATION*



*IN TESTIMONY WHEREOF, I have*
*hereunto set my hand and affixed*
*my Official Seal at Trenton, this*
*3rd day of December, 2007*

*Michellene  Davis*
*Acting State Treasurer*

Certificate Number:   111375440

Verify this certificate online at

https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

*Page  2 of  2 .*

*STATE OF NEW JERSEY*
*DEPARTMENT OF TREASURY*
*SHORT FORM STANDING*

*PHH MORTGAGE CORPORATION*

*With the Previous or Alternate Name*
*COLDWELL BANKER MORTGAGE (Alternate Name)*
*INSTAMORTGAGE.COM (Alternate Name)*
*PHH MORTGAGE SERVICES (Alternate Name)*
*CENDANT MORTGAGE SERVICES CORPORATION (Previous Name)*
*PHH MORTGAGE SERVICES CORPORATION (Previous Name)*
*UNITED STATES MORTGAGE CORPORATION (Previous Name)*
*US MORTGAGE CORPORATION (Previous Name)*
*PHH US MORTGAGE CORPORATION (Previous Name)*
*MORTGAGESAVE.COM (Alternate Name)*
*CENTURY 21 MORTGAGE (Alternate Name)*
*ERA MORTGAGE (Alternate Name)*
*CENDANT MORTGAGE CORPORATION (Previous Name)*
*DOMAIN DISTINCTIVE PROPERTY FINANCE (Alternate Name)*

*I, the Treasurer of the State of New Jersey, do hereby certify that the above-named New Jersey Domestic Profit Corporation was registered by this office on November 16, 1977.*

*As of the date of this certificate, said business continues as an active business in good standing in the State of New Jersey, and its Annual Reports are current.*

*I further certify the registered agent and registered office are:*

*Corporation Service Company*
*830 Bear Tavern Rd*
*West Trenton, NJ 08628*

*Continued on next page . . .*

*STATE OF NEW JERSEY*
*DEPARTMENT OF TREASURY*
*SHORT FORM STANDING*


*PHH MORTGAGE CORPORATION*



*IN TESTIMONY WHEREOF, I have*
*hereunto set my hand and affixed*
*my Official Seal at Trenton, this*
*3rd day of December, 2007*

*Michellene Davis*
*Acting State Treasurer*

*Certificate Number:   111375440*

*Verify this certificate online at*

*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

*Page 2 of 2 .*





*First American Title Company*

# Electronically Recorded Document

## NPS Order:

The attached document was recorded on your behalf by First American
Title Company via our electronic recording process.

We are returning your original document along with this cover page that
includes the post-recording information at the bottom. To view a full
image of the post-recorded document, please visit our website at
www.lendersadvantage.com.

Thank you for allowing First American Title Company to record your
documents.

**Recorded Date/Time:** *5/3/2016 3:11 PM*

**Instrument Number:**

**Book:** *A01183*

**Page:** *0341*

**County/State:**     *Middlesex/NJ*

**Borrower:**         *YSABEL  TORRES*

**Document Type:** *Assignment*

**Document Seq:** *1*

## Do not detach.  This page is now a permanent part of this document.

Please visit *www.famortgageservices.com* to view the entire Recorded document

1100 Superior Ave
Cleveland, OH 44114
**TEL: (216) 241-1278**
**TOLL: (800) 221-8683**
<http://www.famortgageservices.com>

TORRES

NJ

FIRST AMERICAN ELS
ASSIGNMENT

**ORIGINAL**

[Space Above This Line for Recording Data]

| This Document Prepared By: | WHEN RECORDED, RETURN TO: |
|---|---|
| DOLORES LAURIA | FIRST AMERICAN TITLE INSURANCE CO. |
| PHH MORTGAGE SERVICES | 1100 SUPERIOR AVENUE, SUITE 200 |
| ONE MORTGAGE WAY, MAILSTOP DC | CLEVELAND, OHIO 44114 |
| MOUNT LAUREL, NJ 08054 | NATIONAL RECORDING |

Tax/Parcel #:  LOT: 13.01 & 14.02 BLOCK: 144

## ASSIGNMENT OF MORTGAGE

For Value Received, **PHH MORTGAGE CORPORATION**, the undersigned holder of a Mortgage (herein "Assignor") whose address is **ONE MORTGAGE WAY, MOUNT LAUREL, NJ 08054**, does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS** (herein "Assignee"), whose address is **14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254.**

A certain Mortgage dated **MAY 29, 2003** having been given to secure payment of **$152,000.00**, which Mortgage is recorded on **AUGUST 4, 2003** in INSTRUMENT NO. **MG 2003057693 BOOK 08759 PAGE 0874** of the official Records of **MIDDLESEX COUNTY** , State of **NEW JERSEY**, made and executed by **YSABEL TORRES, A MARRIED WOMAN, LUIS M TORRES, A MARRIED MAN**, upon the following property located at **395 MECHANIC STREET, PERTH AMBOY, NEW JERSEY 08861** and situated in **MIDDLESEX COUNTY**, State of **NEW JERSEY**.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments

Assignment Mortgage 3741 / 3742            Page 1            Wintrack #:
                                                                    PHH Loan #          , Seterus Loan #.          and
                                                                    FNMA Loan #

Date _DB_ 04·01·2016

PHH MORTGAGE CORPORATION

By _Jeanette Munoz_
(Signature)
**JEANETTE MUNOZ**
**ASSISTANT VICE PRESIDENT**

Seal: _____    [Space Below This Line for Acknowledgments] _____

State of TEXAS
County of TARRANT

I CERTIFY that on _April 1, 2016_ , _Jeanette Munoz_
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(b) was the maker of the attached instrument;
(c) was authorized to and did execute this instrument _assignment_ of
_mortgage_ , the entity named in this instrument; and
(d) executed this instrument as the act of the entity named in the instrument

_____
Notary Public

Printed Name: _Sherrie Juarez_
My commission expires: _Sept. 22, 2019_

SHERRIE JUAREZ
Notary Public, State of Texas
My Commission Expires
September 22, 2019

Assignment Mortgage 3741 / 3742                    Page 2        Wintrack #:
                                                                PHH Loan #          , Seterus Loan #.      and
                                                                FNMA Loan #



**Middlesex County**
**Document Summary Sheet**

MIDDLESEX COUNTY CLERK

PO BOX 871

JOHN F. KENNEDY SQUARE

NEW BRUNSWICK NJ 08901

INSTR # 2018051968
O BK 17208 PG 1599
RECORDED 06/12/2018 01:19:31 PM
ELAINE M. FLYNN, COUNTY CLERK
MIDDLESEX COUNTY, NEW JERSEY

Official Use Only

| Transaction Identification Number | | 3417926 | 2907829 |
|---|---|---|---|
| Submission Date *(mm/dd/yyyy)* | 06/11/2018 | **Return Address**  *(for recorded documents)* | |
| No. of Pages *(excluding Summary Sheet)* | 1 | NATIONWIDE TITLE CLEARING INC. | |
| Recording Fee *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $42.00 | 2100 ALT 19 NORTH PALM HARBOR, FL 34683 | |
| Realty Transfer Tax | $0.00 | | |
| Total Amount | $42.00 | | |

| Document Type | ASSIGNMENT OF MORTGAGES |
|---|---|

**Municipal Codes**
PERTH AMBOY                                        PA

| Batch Type | L2 - LEVEL 2 (WITH IMAGES) |
|---|---|

Bar Code(s)

||||||| 2 4 4 4 0 6 |||||||

Additional Information (Official Use Only)

*• DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

937F0660-C989-A61B-5109-C741264A4957/3417926 2907829                                        Page 1 of 2

**Middlesex County**
**Document Summary Sheet**

| Type | ASSIGNMENT OF MORTGAGES | | | |
|---|---|---|---|---|
| Consideration | | | | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | |
| Document Date | 06/08/2018 | | | |
| Reference Info | | | | |
| **Book LD** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| M | 08759 | 0874 | | |

ASSIGNMENT OF MORTGAGES

| MORTGAGOR/ASSIGNOR | Name | Address |
|---|---|---|
| | FEDERAL NATIONAL MORTGAGE ASSOCIATION | |
| | NATIONWIDE TITLE CLEARING INC | |
| | YSABEL TORRES | |
| | LUIS M TORRES | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | COMMUNITY LOAN FUND OF NEW JERSEY INC | |

Parcel Info

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

**\* DO NOT REMOVE THIS PAGE.**
**COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.**
**RETAIN THIS PAGE FOR FUTURE REFERENCE.**

CFN 2018051968 O DOC_TYPE AS BK 17206 PG 1600 PAGE 2 OF 3

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Fannie Mae Loan #

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to COMMUNITY LOAN FUND OF NEW JERSEY, INC., WHOSE ADDRESS IS 108 CHURCH STREET, 3RD FLOOR, NEW BRUNSWICK, NJ 08901 (732)640-2061, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 05/29/2003, made by VSABEL TORRES AND LUIS M TORRES to FLEET NATIONAL BANK, and recorded on 08/04/2003, in Mortgage Book 08759 and Page 0874, in the office of the Register of Titles and County Recorder in MIDDLESEX County, New Jersey.

Property is commonly known as: 395 MECHANIC ST CITY OF PERTH AMBOY
PERTH AMBOY, NJ 08861.

Dated this 08th day of June in the year 2018.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., its Attorney-In-Fact (POA RECORDED: 01/31/2017 BK: 06932 PG: 0106)


DANIELLE BURNS
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 08th day of June in the year 2018, by Danielle Burns as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-In-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.


CYNTHIA ALBANO
COMM EXPIRES: 08/01/2020

CYNTHIA ALBANO
Notary Public - State of Florida
My Comm. Expires August 1, 2020
Commission # GG001222

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
FNMA1



# Middlesex County
# Document Summary Sheet

MIDDLESEX COUNTY CLERK

PO BOX 871

JOHN F. KENNEDY SQUARE

NEW BRUNSWICK NJ 08901

INSTR # 2018068146
O BK 17256 PG 130
RECORDED 08/03/2018 01:28:03 PM
ELAINE M. FLYNN, COUNTY CLERK
MIDDLESEX COUNTY, NEW JERSEY
RECORDING FEES $52.00

**Official Use Only**

| Transaction Identification Number | | 3528010 | 2987145 |
|---|---|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 07/31/2018 | **Return Address** *(for recorded documents)* | |
| **No. of Pages** *(excluding Summary Sheet)* | 2 | FORTUNE TITLE AGENCY, INC. | |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $2.00 included)* | $52.00 | 39 WOODLAND ROAD | |
| **Realty Transfer Tax** | $0.00 | ROSELAND, NJ 07068 | |
| **Total Amount** | $52.00 | | |

| Document Type | ASSIGNMENT OF MORTGAGES |
|---|---|

**Municipal Codes**

PERTH AMBOY                                        PA

| Batch Type | L2 - LEVEL 2 (WITH IMAGES) |
|---|---|

**Bar Code(s)**

2 5 2 2 2 8

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*



# Middlesex County
## Document Summary Sheet

| | | |
|---|---|---|
| **Type** | ASSIGNMENT OF MORTGAGES | |
| **Consideration** | | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | |
| **Document Date** | 07/24/2018 | |

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| M | 08759 | 0874 | | |

**ASSIGNMENT OF MORTGAGES**

| MORTGAGOR/ASSIGNOR | Name | Address |
|---|---|---|
| | COMMUNITY LOAN FUND OF NEW JERSEYINC | |
| | YSABEL TORRES | |
| | LUIS TORRES | |

| ASSIGNEE | Name | Address |
|---|---|---|
| | NJCC FUND 5 | |
| | US BANK NATIONAL ASSOCIATION | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MIDDLESEX COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

CFN 2018068146 O DOC_TYPE AS BK 17256 PG 131 PAGE 2 OF 4

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

# ASSIGNMENT OF MORTGAGE

*FOR VALUE RECEIVED,*
ASSIGNOR: **COMMUNITY LOAN FUND OF NEW JERSEY, INC., ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, does hereby assign and transfer to
ASSIGNEE: **NJCC FUND #5 TRUST, BY U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE,** whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, all its right, title and interest in and to the described Mortgage:
BORROWER: **YSABEL TORRES, A MARRIED WOMAN, LUIS M TORRES, A MARRIED MAN**
BENEFICIARY: **FLEET NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**
DATED: **5/29/2003**                    AMOUNT: **$152,000.00**
RECORDED: **8/4/2003** at  Book **08759** Page **0874**, Instrument or Document **MG  2003 057693**, in the **MIDDLESEX** County Clerk's Office, State of **NEW JERSEY**.

Property Address: 395 MECHANIC STREET, PERTH AMBOY, NEW JERSEY 08861

Executed this ___*July 24, 2018*___.

COMMUNITY LOAN FUND OF NEW JERSEY, INC. BY SELENE FINANCE LP, ATTORNEY IN FACT

By:   NATASHA GUTWILLIG
Title:  AUTHORIZED SIGNER

POA recorded: 1/16/2018 at Book 16997, Page 1749 at Instrument Number 2018004675 in Ocean County, NJ

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on  _7/24/2018_  by NATASHA GUTWILLIG the
AUTHORIZED SIGNER of SELENE FINANCE, LP, A DELAWARE LIMITED PARTNERSHIP, AS
ATTORNEY IN FACT FOR COMMUNITY LOAN FUND OF NEW JERSEY, INC., who is personally known to
me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on
the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument, and
that such individual made such appearance before the undersigned, on behalf of said corporation.

Notary Public in and for the State of TEXAS
Notary's Printed Name:  DANIELLE R. MURPHY
My Commission Expires: 10/24/2020

DANIELLE R. MURPHY
Notary Public, State of Texas
Comm. Expires 10-24-2020
Notary ID130873214

For $152,000.00 dated 5/29/2003

**EXHIBIT  B**

<u>**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**</u>

**0** Valuation of Security          **0** Assumption of Executory Contract or Unexpired Lease          **0** Lien Avoidance

*Last revised: December 1, 2017*

# UNITED STATES BANKRUPTCY COURT
## District of New Jersey

In Re:      **Ysabel Abreu-Detorres**                    Case No.: _____ **18-26172** _____

                                                Judge: _____

                         Debtor(s)

## CHAPTER 13 PLAN AND MOTIONS

☑ Original                    ☐ Modified/Notice Required          Date:        8-22-2018
☐ Motions Included            ☐ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE.

## YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

THIS PLAN:

☐ DOES ☑ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☐ DOES ☑ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☐ DOES ☑ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney  **RCN** _____      Initial Debtor:   **Y A** _____      Initial Co-Debtor  _____

1

## Part 1:  Payment and Length of Plan

      a.  The debtor shall pay __200.00 Monthly__ to the Chapter 13 Trustee, starting on __September 1, 2018__ for approximately __60 months__.

      b.  The debtor shall make plan payments to the Trustee from the following sources:
- ☑ Future Earnings
- ☐ Other sources of funding (describe source, amount and date when funds are available):

      c.  Use of real property to satisfy plan obligations:
- ☑ Sale of real property __SETERUS, INC__
  Description:  home 395 Mechanic Street, Perth Amboy, NJ
  Proposed date for completion: __within 12 months__

- ☐ Refinance of real property:
  Description:
  Proposed date for completion: _____

- ☐ Loan modification with respect to mortgage encumbering property:
  Description:
  Proposed date for completion: _____

      d.  ☐  The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

      e.  ☐  Other information that may be important relating to the payment and length of plan:

## Part 2:  Adequate Protection                    X NONE

      a.  Adequate protection payments will be made in the amount of $____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to ____ (creditor).

      b.  Adequate protection payments will be made in the amount of $____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: ____ (creditor).

## Part 3:  Priority Claims (Including Administrative Expenses)

      a. All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
| --- | --- | --- |
| ROBERT C. NISENSON | ATTORNEYS FEES | 2800 |

      b. Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:
- ☑ None
- ☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
| --- | --- | --- | --- |

2

## Part 4: Secured Claims

**a. Curing Default and Maintaining Payments on Principal Residence:** ☑ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| | | | | | |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears:** ☑ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| | | | | | |

**c. Secured claims excluded from 11 U.S.C. 506:** ☑ **NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
| | | | | |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments** ☑ **NONE**

    1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this section ALSO REQUIRES the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to Be Paid |
|---|---|---|---|---|---|---|---|
| -NONE- | | | | | | | |

    2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

3

**e. Surrender** ☑ **NONE**

    Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
| | | | |

**f. Secured Claims Unaffected by the Plan** ☐ **NONE**

    The following secured claims are unaffected by the Plan:

<u>Creditor</u>

NATIONSTAR MORTGAGE, LLC

**g. Secured Claims to be Paid in Full Through the Plan** ☑ **NONE**

| Creditor | Collateral | Total Amount to be Paid through the Plan |
|---|---|---|
| | | |

## Part 5: Unsecured Claims ☐ NONE

    **a. Not separately classified** allowed non-priority unsecured claims shall be paid:

      ☐    Not less than $____ to be distributed *pro rata*

      ☐    Not less than ___ percent

      ☑    *Pro Rata* distribution from any remaining funds

    **b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
| | | | |

## Part 6: Executory Contracts and Unexpired Leases ☒ NONE

    (NOTE: See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

    All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
| | | | | |

## Part 7: Motions ☒ NONE

**NOTE: All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal,* within the time and in the manner set forth in D.N.J. LBR 3015-1. *A Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

    **a. Motion to Avoid Liens under 11 U.S.C. Section 522(f).** ☑ **NONE**
The Debtor moves to avoid the following liens that impair exemptions:

4

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**b. Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☑ NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
| | | | | | | |

**c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☑ NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
| | | | | | |

## Part 8:  Other Plan Provisions

a. **Vesting of Property of the Estate**
   ☑ Upon Confirmation
   ☐ Upon Discharge

b. **Payment Notices**
   Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

c. **Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:
1) Ch. 13 Standing Trustee Commissions
2) Other Administrative Claims
3) Secured Claims
4) Lease Arrearages
5) Priority Claims
6) General Unsecured Claims

d. **Post-Petition Claims**

The Standing Trustee ☑ is, ☐ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

## Part 9:  Modification    ☒ NONE

5

If this Plan modifies a Plan previously filed in this case, complete the information below.
Date of Plan being modified: _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
|---|---|
| | |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐ Yes    ☐ No

## Part 10 :  Non-Standard Provision(s): Signatures Required

Non-Standard Provisions Requiring Separate Signatures:

☑ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are void.

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Certification.

I certify under penalty of perjury that the plan contains no non-standard provisions other than those set forth in this final paragraph.

Date    **August 22, 2018** _____    **/s/ Robert C. Nisenson** _____
**Robert C. Nisenson 6680**
Attorney for the Debtor

Date:    **August 22, 2018** _____    **/s/ Ysabel Abreu-Detorres** _____
**Ysabel Abreu-Detorres**
Debtor

Date:    _____    _____
Joint Debtor

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

Date    **August 22, 2018** _____    **/s/ Robert C. Nisenson** _____
**Robert C. Nisenson 6680**
Attorney for the Debtor

I certify under penalty of perjury that the above is true.

Date:    **August 22, 2018** _____    **/s/ Ysabel Abreu-Detorres** _____
**Ysabel Abreu-Detorres**
Debtor

Date:    _____    _____
Joint Debtor

6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Karen B. Olson, Esq.
Knuckles, Komosinski & Manfro, LLP
565 Taxter Road, Suite 590
Elmsford, NY 10523
Phone: (914) 345-3020
E-Fax (914) 992-9154
kbo@kkmllp.com

In Re:

Ysabel Abreu-Detorres

| | |
|---|---|
| Case No.: | 18-26172-CMG |
| Chapter: | 13 |
| Adv. No.: | |
| Hearing Date: | |
| Judge: | Christine M. Gravelle |

## CERTIFICATION OF SERVICE

1.  I, _____ Erika Jones _____ :

    ☐  represent the _____ in the above-captioned matter.

    ☑  am the secretary/paralegal for _Karen B. Olson, Esq._ , who represents the
        _____ Creditor _____ in the above captioned matter.

    ☐  am the _____ in the above case and am representing myself.

2.  On _October 18 2018_, I sent a copy of the following pleadings and/or documents to the
    parties listed in the chart below:

    Objection to Confirmation of the Debtor's Proposed Chapter 13 Plan

3.  I hereby certify under penalty of perjury that the above documents were sent using the mode of
    service indicated.

Dated: _October 18 2018_                    _/s/ Erika Jones_
                                             Signature

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Ysabel Abreu-Detorres<br>114 W. Douglas Street<br>Reading, PA 19601 | Debtor | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
| Robert C. Nisenson<br>Robert C. Nisenson, LLC<br>10 Auer Court<br>Suite E<br>East Brunswick, NJ 08816 | Debtor's Attorney | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☑ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
| Albert Russo<br>Standing Chapter 13 Trustee<br>CN 4853<br>Trenton, NJ 08650-4853 | Trustee | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☑ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br>☑ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☑ Notice of Electronic Filing (NEF)<br>☐ Other _____<br>(as authorized by the court *) |

2